UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATAN IBARRA-GARCIA,

               Petitioner,

    v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

               Respondents.

Case No. C20-740-RAJ-MLP

REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Petitioner, a native and citizen of Mexico, brings this 28 U.S.C. § 2241 habeas action through counsel to obtain release from U.S. Immigration and Customs Enforcement ("ICE") custody at the Northwest ICE Processing Center ("NWIPC") or a bond hearing. (Pet. (Dkt. # 1).) Currently before the Court is the Government's return memorandum and motion to dismiss. (Mot. (dkt. # 3)), which Petitioner opposes (Resp. (dkt. #11)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's request for release be DENIED and that he be GRANTED a bond hearing.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

Petitioner entered the United States with his mother when he was a young child and is currently 24 years old. (Pet. at 2; Lesnau Decl., Ex. A (Dkt. # 4-1) at 3.) In 2016, he was approved for Deferred Action for Childhood Arrivals ("DACA") through December 27, 2018. (Pet., Ex. 1 (Dkt. # 1-1); Renner Decl. (Dkt. # 5) at ¶ 6.)

In April 2016, Petitioner was convicted of misdemeanor Possession of Drug Paraphernalia in violation of Idaho law and sentenced to two days in jail. (Renner Decl. at ¶ 7; Lesnau Decl., Ex. A at 3.) In June 2016, he was convicted of Driving without Privileges and Contempt of Court, both misdemeanors under Idaho law, and sentenced to one day in jail. (*Id.*) In December 2016, he was convicted of Driving without Privileges—Second Offense, Possession of Drug Paraphernalia, and Probation Violation, all misdemeanors under Idaho law. (*Id.*) He was sentenced to 180 days in jail for Driving without Privileges—Second Offense, fined for possessing drug paraphernalia, and sentenced to two days in jail for the probation violation. (Lesnau Decl., Ex. A at 3.) In October 2017, Petitioner was convicted of Probation Violation. (Renner Decl. at ¶ 7.)

In November 2018, Petitioner submitted an application to U.S. Citizenship and Immigration Services ("USCIS") to renew his DACA status. (*See* Pet., Ex. 1.) On December 17, 2018, Petitioner was arrested for possession of cocaine and marijuana and held at the Ada County Jail in Boise, Idaho. (Renner Decl. at ¶ 8.) On December 18, 2018, ICE took Petitioner into custody, and the U.S. Department of Homeland Security ("DHS") issued him a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) because he had not been admitted or paroled into the United States. (*Id.* at ¶ 10; Lesnau Decl., Exs. B (Dkt. # 4-2), C (Dkt. # 4-3).) On January 9, 2019, an immigration judge ("IJ") held a bond hearing and denied

REPORT AND RECOMMENDATION - 2

bond, finding that Petitioner presents a danger to the community and a flight risk. (Lesnau Decl., Ex. E (Dkt. # 4-5).) Petitioner did not appeal this decision.

On January 16, 2019, USCIS denied Petitioner's DACA renewal application. (Renner Decl. at ¶ 12.) On April 3, 2019, Petitioner married a U.S. citizen and subsequently filed an application to adjust his status to that of lawful permanent resident on the basis of this marriage. (*Id.* at ¶¶ 13-14.)

On September 24, 2019, the IJ issued a written decision sustaining the removal charge against Petitioner contained in the Notice to Appear, denying Petitioner's request for voluntary departure and his application for adjustment of status, and ordering him removed to Mexico. (Renner Decl. at ¶ 16; *see also* Burgus Decl. (Dkt. # 6) at ¶ 14.) Petitioner appealed to the Board of Immigration Appeals ("BIA"). (Renner Decl. at ¶ 17; Burgus Decl. at ¶ 15.)

While his appeal was pending, Petitioner filed a motion for a bond redetermination with the IJ based on the dismissal of the criminal charges that led to his arrest by ICE. (Renner Decl. at ¶ 18.) On February 26, 2020, the IJ denied his motion based on a finding that Petitioner had not shown a material change in circumstances. (Lesnau Decl., Ex. F (Dkt. # 4-6).) The IJ reasoned, "Although the drug possession charges have been dismissed, at the last bond hearing, Respondent admitted that he possessed cocaine and has been using marijuana since 2014." (*Id.*)

On May 13, 2020, the BIA dismissed Petitioner's appeal of the IJ's removal order. (Renner Decl. at ¶ 20.) On May 22, 2020, Petitioner filed a petition for review and motion for a stay of removal with the Ninth Circuit Court of Appeals. *Ibarra-Garcia v. Barr*, No. 20-71445, Dkt. # 1 (9th Cir. May 22, 2020). A temporary stay of removal is in effect and the case remains pending.

## III.   DISCUSSION

Petitioner argues that his prolonged detention violates his rights under the Immigration and Nationality Act ("INA") and the due process clause. (Pet. at 5-10.) He also asserts in a "codicil" to his petition that his continued detention during the COVID-19 pandemic constitutes "punishment or cruel treatment." (*Id.* at 10-12.) He seeks release from detention or a bond hearing where the government bears the burden of justifying his detention by clear and convincing evidence. In moving to dismiss, the Government argues that Petitioner's detention comports with the statutory requirements as well as due process. As discussed below, the Court concludes that Petitioner's detention does not violate the INA but that due process requires he receive the bond hearing he requests.

### A.   Petitioner is Not Entitled to Release

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens, such as Petitioner, who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[1] 8 U.S.C. § 1226.

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ also may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202

(9th Cir. 2011), but they cannot second guess an IJ's discretionary judgment regarding the application of § 1226(a), 8 U.S.C. § 1226(e).

Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

In this case, Petitioner's prolonged detention does not entitle him to release. A noncitizen detained under § 1226(a) is entitled to release if he can show that his detention is indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (9th Cir. 2008). In *Prieto-Romero*, the Ninth Circuit held that the petitioner's detention was not indefinite because the government could repatriate him to Mexico if his petition for review was unsuccessful. *Id.* Petitioner here does not present any evidence that ICE will not be able to remove him if he is ultimately ordered removed. Accordingly, Petitioner's removal is not indefinite, his detention continues to be authorized by statute.

**B. Petitioner is Not Entitled to a Bond Hearing Under 8 U.S.C. § 1226(a)**

Ninth Circuit jurisprudence used to require noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government had the burden to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *see also Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949, 951 (9th Cir. 2008) (construing § 1226(a) as requiring bond hearings for detainees subject to prolonged detention while their petitions for review were pending, at which the government was required to justify continued detention). In *Jennings*, the Supreme Court reversed *Rodriguez III*,

explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text—which says only that the Attorney General 'may release' the [noncitizen] 'on . . . bond'—even remotely supports the imposition of" periodic bond hearings every six months where the government bears the burden by clear and convincing evidence. 138 S. Ct. at 847; *see also id.* at 848 ("[T]he meaning of the relevant statutory provisions is clear—and contrary to the decision of the Court of Appeals."). The Supreme Court did not decide whether the Constitution requires such hearings and remanded to the Ninth Circuit for consideration of that question.[2]

The Government argues that *Jennings* abrogated the Ninth Circuit's holding in *Casas-Castrillon* that § 1226(a) requires a bond hearing after a certain period of detention where the government bears the burden to justify continued detention. (Mot. at 8.) *Casas-Castrillon* remains binding circuit authority unless it is "clearly irreconcilable" with higher authority. *See In re Amy*, 714 F.3d 1165, 1167 (9th Cir. 2013). The "clearly irreconcilable" requirement is a "high standard." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoted source omitted). "[I]t is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent . . . ." *Id.* (quoted source omitted). So long as the court "can apply . . . prior circuit precedent without running afoul of the intervening authority," it must do so. *Id.* (internal quotation marks omitted). However, "the issues decided by the higher court need not be identical in order to be controlling." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.*

---

[2] The Ninth Circuit subsequently remanded to the district court. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252 (9th Cir. 2018).

REPORT AND RECOMMENDATION - 7

The Court agrees with the Government that *Casas-Castrillon*'s relevant holdings are clearly irreconcilable with *Jennings*. First, the Supreme Court plainly stated that § 1226(a) does not place the burden on the government, contrary to *Casas-Castrillon*'s holding. *Jennings*, 138 S. Ct. at 847; *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) ("*Jennings* undoubtedly rejected construing [§ 1226(a)] to require such a burden . . . ."). Second, while the periodic bond hearing requirement that *Jennings* rejected is not the same as *Casas-Castrillon*'s determination that bond hearings were required at a specific point in the removal proceedings, *see Aleman Gonzalez*, 955 F.3d at 785-86 (recognizing that *Casas-Castrillon* did not establish the six-month bond hearing requirement that *Jennings* invalidated), this Court concludes that *Jennings* "undercut the theory or reasoning underlying" *Casas-Castrillon* such that the decisions are clearly irreconcilable.[3] *Casas-Castrillon* held that "§ 1226(a) must be construed as *requiring* the Attorney General to provide" noncitizens subject to prolonged detention with a bond hearing, citing the constitutional doubtfulness of prolonged detention without such an individualized determination. 535 F.3d at 951 (emphasis in original). *Jennings*, however, undercut *Casas-Castrillon*'s reliance on constitutional concerns to construe the statute. *See Rodriguez IV*, 909 F.3d at 255 ("[*Jennings*] held that we misapplied the canon of constitutional avoidance to hold that certain immigration detention statutes, [including § 1226(a)], implicitly contain a reasonableness determination after which due process concerns require that persons in prolonged mandatory detention are entitled to individualized bond hearings . . . .")). Furthermore, *Casas-Castrillon*'s statutory construction cannot be squared with *Jennings*'s emphasis on the plain language of the statute, "which says only that the Attorney General 'may release' the [noncitizen] 'on . . . bond.'" *Jennings*, 138 S. Ct. at 847; *see also Aleman Gonzalez*, 955 F.3d at

---

[3] The Ninth Circuit in *Aleman Gonzalez* expressly stated that it did not decide "what specifically remains of *Casas-Castrillon*'s statutory holding after *Jennings*." 955 F.3d at 786 n.16.

782 (noting that *Jennings* "took issue with our court's imposition of 'procedural protections that *go well beyond the initial bond hearing established by existing regulations*' for [noncitizens] detained pursuant to § 1226(a)" (quoting *Jennings*, 138 S. Ct. at 847, emphasis added in *Aleman Gonzalez*)). Thus, like the periodic bond hearing requirement at issue in *Jennings*, the statutory text does not "even remotely support[] imposition of" *Casas-Castrillon*'s bond hearing requirement. *Id.* For these reasons, the Court concludes that Petitioner is not entitled to a bond hearing under § 1226(a) as construed by *Casas-Castrillon*.

**C. Due Process Requires that Petitioner Receive a Bond Hearing**

As noted above, *Jennings* did not address the constitutional challenge to prolonged detention under § 1226(a). Since *Jennings*, judges in this district have applied the traditional balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether a subsequent bond hearing is required for § 1226(a) detainees. *See, e.g.*, *Madrigal v. Nielsen*, No. 18-843, 2018 WL 4732469, at *3 (W.D. Wash. Aug. 31, 2018), *R. & R. adopted*, 2018 WL 4700552 (W.D. Wash. Oct. 1, 2018) (applying the *Mathews* test to determine whether due process required subsequent bond hearing). *Mathews* requires courts consider: (1) the private interest at stake; (2) the government's interest, including the function involved and the fiscal and administrative burdens that any additional procedural requirements would entail; and (3) the risk of an erroneous deprivation of the private interest at stake through the procedures used, and the probable value, if any, of additional procedural safeguards. 424 U.S. at 335.

"As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees). Petitioner has been

detained since December 2018, and it has been approximately 20 months since his bond hearing. This factor weighs heavily in Petitioner's favor.

As to the second factor, the Government has legitimate interests that are implicated by Petitioner's continued detention: assuring he will appear if ultimately ordered removed and protecting the public. *See Soto v. Sessions*, No. 18-2891, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (citing 8 C.F.R. § 236.1(c)(8) (allowing release from detention if noncitizen "is likely to appear for any further proceeding" and "would not pose a danger to property or persons")); *Zadvydas*, 533 U.S. at 690-91). However, as other courts have recognized, the key government interest at stake "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No. 19-1358, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020), *R. & R. adopted*, 2020 WL 1855189 (D. Or. Apr. 13, 2020) (collecting cases). Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." *Id.* (quoting *Lopez Reyes v. Bonnar*, 362 F.Supp.3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has legitimate interests, they do not weigh as heavily as Petitioner's.

With respect to the third factor, Petitioner has already received one bond hearing and had the opportunity to request a subsequent bond hearing based on a material change in circumstances. Thus, the risk of an erroneous deprivation of his liberty interest is less than a noncitizen subject to prolonged detention who has never had a bond hearing. Nevertheless, there is no indication in the record that Petitioner's bond hearing comported with the constitutional due process requirements of *Singh*, which held that the Government must justify prolonged detention

REPORT AND RECOMMENDATION - 10

by clear and convincing evidence. *See, e.g.*, *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1120-21 (W.D. Wash. 2019) (requiring immigration judge to apply the procedural requirements of *Singh* to prolonged detention bond hearing); *Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 923-24 (W.D. Wash. 2020) (same); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (holding that *Jennings* did not undermine the constitutional due process holding in *Singh*). There is also no indication in the record that the IJ who ruled on Petitioner's request for a subsequent bond redetermination considered *Singh*. Given that Petitioner's criminal record consists of only misdemeanor offenses, it is possible that *Singh*'s burden of proof could affect the outcome of a new bond hearing. *See Singh*, 638 F.3d at 1205 (ordering new bond hearing with correct burden of proof where the evidence of dangerousness was equivocal). Accordingly, the Court concludes that this factor weighs in Petitioner's favor.

On balance, the *Mathews* factors weigh in favor of Petitioner. Thus, the Court recommends granting him a bond hearing that complies with the procedural requirements of *Singh*.

The Government raises two primary arguments in opposition to this conclusion, neither of which is persuasive. First, the Government argues that Petitioner's detention is "voluntary" because he could choose to prosecute his petition for review from abroad, and thus the length of detention does not violate due process. (Mot. at 11 (citing *Curz-Ortiz v. Gonzales*, 221 Fed. App'x 531 (9th Cir. 2007) (unpublished)).) No published Ninth Circuit case has ever reached this conclusion, and district courts considering the same argument have soundly rejected it. *See Judulang v. Chertoff*, 535 F.Supp.2d 1129, 1132-33 (S.D. Cal. 2008); *Mau v. Chertoff*, 549 F.Supp.2d 1247, 1251-52 (S.D. Cal. 2008). As the court in *Mau* explained,

> [T]he Ninth Circuit's decision in *Tijani* [*v. Willis*, 430 F.3d 1241 (9th Cir. 2005)] to grant habeas relief to the petitioning [noncitizen]—as that [noncitizen] was

> concurrently seeking Ninth Circuit review of his removal order—conveys an implicit rejection of the argument advanced by Respondents that [a noncitizen's] detention becomes "voluntary" by virtue of that [noncitizen's] filing of a petition for review.

*Mau*, 549 F.Supp.2d at 1251-52. The Court agrees with this analysis and notes that it is also supported by *Singh*, which involved a petitioner whose petition for review was pending. Petitioner's detention does not comport with due process simply because he could pursue his petition for review from abroad.

Second, the Government argues that the burden at the bond hearing should remain on Petitioner. (Mot. at 14-15.) In support, the Government points to the regulations governing § 1226(a) bond hearings, BIA decisions, and *Jennings*. (*See id.*) Unlike *Singh*, none of this authority addresses the constitutional due process requirements for prolonged detention bond hearings. *Singh* is the binding precedent that governs the situation before the Court, and therefore Petitioner's bond hearing should comply with its requirements.

### D. Petitioner is not Entitled to Release Because of COVID-19

To evaluate the constitutionality of a civil detention condition under the Fifth Amendment, a district court must determine whether those conditions "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473-74 (2015). Punishment may be shown through an express intent to punish or a restriction or condition that "is not reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539; *see also Kingsley*, 135 S. Ct. at 2473-74 (clarifying that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose").

Petitioner asserts that the unnecessary exposure to the life-threatening conditions created by COVID-19 amounts to punishment.[4] (*See* Pet. at 12.) Petitioner does not identify any express intent to punish, thus the Court will assume that his claim arises under the second test. The Supreme Court has recognized legitimate government interests in ensuring that noncitizens appear for their removal or deportation proceedings and protecting the community from harm. *See Jennings*, 138 S. Ct. at 836; *Demore*, 538 U.S. at 520-22; *Zadvydas*, 533 U.S. at 690-91. Petitioner fails to establish that the conditions of his detention are excessive in relation to these legitimate objectives. Petitioner's age does not place him at increased risk of serious illness should he contract COVID-19, and he does not identify any underlying health conditions that would increase his risk. Given that Petitioner has not shown he is at higher risk for serious illness or death from COVID-19, the Court concludes that he is not detained under conditions that amount to punishment in violation of his Fifth Amendment rights. *See, e.g.*, *Moturi v. Asher*, No. C19-2023-RSM-BAT, 2020 WL 2084915, at *4-5 (W.D. Wash. Apr. 30, 2020) (finding that the petitioner failed to establish a likelihood of success on the merits of his punitive conditions of confinement claim because his medical history did not put him at risk for serious illness or death from COVID-19). Accordingly, the Court recommends that his request for release on this basis be denied.

## IV.    CONCLUSION

The Court recommends that both the Government's motion to dismiss (dkt. # 3) and Petitioner's habeas petition (dkt. # 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends denying Petitioner's request for release but ordering the Government to

---

[4] Petitioner does not address this issue in his response to the Government's motion to dismiss. (*See generally* Resp.)

provide him with a bond hearing within 30 days of the order on this Report and Recommendation that comports with the procedural requirements of *Singh*. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **10/26/2020.**

Dated this 9th day of October, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14